OPINION
On Tuesday, January 4, 2000 at 8:47 p.m., appellee, Mark G. Brickman, was pulled over for speeding while driving on state route 82 in Aurora, Ohio. As a result of the stop, he was charged with speeding, in violation of R.C. 4511.21, and driving under the influence of alcohol or drugs, in violation of R.C. 4511.19(A)(1). Charges were brought in the Portage County Municipal Court, Kent Division.
On February 22, 2000, appellee filed a motion to suppress all evidence gathered after the initial stop. He argued that, after issuing a traffic citation, the arresting officer lacked reasonable suspicion to conduct any further investigation into whether appellee was under the influence of alcohol by compelling him to perform sobriety tests.
On May 10, 2000, a hearing was held on the motion. At the hearing, Officer Lawrence Margoff, of the Aurora Police Department, testified that, on the evening in question, he was parked in the median of S.R. 82, facing east, near its intersection with Parkway Boulevard. He testified to the events leading up to his decision to ask appellee to complete sobriety tests, as follows:
 "1) appellee was driving eastbound on route 82 and `aggressively came and stopped in front' of Officer Margoff's parked car then sped off;
 "(2) he measured appellee's speed with radar at 55 mph in a 35 mph zone;
 "(3) while following appellee, he noticed appellee weaving back and forth within his lane;
 "(4) he activated his overhead lights and pulled appellee over into the parking lot of the Aurora Inn;
 "(5) after asking appellee to open his window, he noticed an odor of alcohol;
"(6) appellee had `red, glossy eyes;' and,
"(7) appellee admitted that he `had a beer.'"
At that point, Officer Margoff had appellee perform three sobriety tests: the "horizontal-gaze;" the "one-leg stand;" and, the "heel-to-toe" test. The last two appellee performed poorly. When asked the basis for having appellee step out of his vehicle, Officer Margoff answered: "[j]ust the speed, the aggressive driving, stopping, and accelerating, the red, glossy eyes, the odor, kind of a group of the whole scenario." Results of a blood alcohol test performed on appellee showed a 0.024% concentration of alcohol, below the legal limit specified in R.C. 4511.19(A)(3).
On cross-examination, Officer Margoff conceded that the odor of alcohol was mild and acknowledged that he did not include his observations about appellee's eyes or reckless driving in his written report of the incident. According to Officer Margoff's testimony, on cross-examination, the only observations included in his police report were: (1) appellant's speed; (2) that he noticed an odor of alcohol; and, (3) appellee's admission that he "had a beer."
At the conclusion of the hearing, the court stated:
 "* * * The officer had a right to stop the defendant, but I feel that the state did not meet its burden relative to probable cause. So, therefore, I will overrule the motion as to the reasonableness of the stop, and sustain it as to the probable cause for arrest.
 "And, Mr. Vogel [appellee's counsel], you would probably have been better served if you would have used one of my cases, which I had a similar case like this that went to the appeals court, [who] made [a] similar ruling. * * *"
 On May 10, 2000, the trial court issued a judgment entry sustaining appellee's motion to suppress. The state appeals and raises the following assignment of error:
 "The trial court erred when it found that the state failed to establish probable cause to arrest appellee for DUI."
This court has previously noted that there are three distinct stages in the typical drunk driving scenario: (1) the initial stop; (2) the request that the driver submit to field sobriety tests; and (3) the arrest. Statev. Richards (Oct. 15, 1999), Portage App. No. 98-P-0069, unreported, at 5.
Neither party disputes that Officer Margoff had probable cause to make the initial stop to issue appellee a citation for speeding. It is well established that an officer's observation of any traffic law violation constitutes sufficient grounds to stop the vehicle that violated the law. Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091,1097-1098. We have repeatedly held that where a police officer witnesses a minor traffic violation, he or she is justified in initiating a limited stop for the purpose of issuing a citation. State v. Jennings (Mar. 3, 2000), Trumbull App. No. 98-T-0196, unreported. At issue is whether, after stopping the vehicle, Officer Margoff perceived facts indicating that appellee was intoxicated and developed a reasonable suspicion that he was intoxicated. If so, he would be justified in asking appellee to step out of the vehicle and perform field sobriety tests. State v.Yemma (Aug. 9, 1996), Portage App. No 95-P-0156, unreported, at 5-6;State v. Teter (Oct. 6, 2000), Ashtabula App. No. 99-A-0073, unreported. Appellee argues that Officer Margoff did not have reasonable suspicion to ask him to perform these tests and, thus, the outcome of those tests was inadmissible.
In State v. Evans (1998), 127 Ohio App.3d 56, 711 N.E.2d 761, fn. 2, we noted, from a summation of case law, many of the factors to be considered by a court when viewing the totality of circumstances confronting the arresting officer when deciding whether to administer roadside sobriety tests. That list, on which no one factor is dispositive, consists of the following:
 (1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning);
 (2) the location of the stop (whether near establishments selling alcohol);
 (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.);
 (4) whether there is a cognizable report that the driver may be intoxicated;
 (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.);
 (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.);
 (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath;
 (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.);
 (9) the suspect's demeanor (belligerent, uncooperative, etc.);
 (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and
 (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given.
At a hearing on a motion to suppress, the trial court functions as the trier of fact. Thus, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357,366, 582 N.E.2d 972. On review, an appellate court must accept the trial court's findings of fact, if those findings are supported by competent, credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586,592, 639 N.E.2d 498. After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met. Id.
A request to perform field sobriety tests is a greater invasion of an individual's liberty interests than the initial stop and therefore such a request must be justified by specific articulable facts. State v. Evans
(1998), 127 Ohio App.3d 56, 62, 711 N.E.2d 761, 766 (citing State v.Yemma (Aug. 9, 1996), Portage App. No. 95-P-0156, unreported). "Once the officer has stopped the vehicle for some minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate whether the detainee may be intoxicated based on specific articulable facts, such as where there are clear symptoms that the detainee is intoxicated." Yemma, supra, at 4.
In the case sub judice, Officer Margoff stopped appellee for driving twenty miles per hour over the speed limit, and then proceeded to investigate the appellee for driving under the influence. Officer Margoff's decision was based on his observation that appellee smelled mildly of alcohol and appellee's admission that he "had a beer." Courts generally approve an officer's decision to conduct field sobriety tests when the officer's decision was based on a number of factors. State v.Evans (1998), 127 Ohio App.3d 56, 63, 711 N.E.2d 761, 766. Officer Margoff's decision to investigate appellee for driving under the influence of alcohol was not based on a number of the factors set forth in Evans. Officer Margoff has not demonstrated factors which give rise to a reasonable suspicion, based on articulable facts, that the request to perform field sobriety tests was justified.
The case at bar involves only the officer's decision to conduct further investigation, not to make an arrest. If the trial court had based its decision solely on Officer Margoff's testimony on direct examination, it could have concluded that he had reasonable suspicion to administer sobriety tests to appellee. However, appellee impeached that testimony with his police report that set forth the facts that he had stopped appellee for speeding, noticed a mild odor of alcohol, and that appellee admitted drinking but did not state that appellee had red, glossy eyes or had driven aggressively or erratically.
Appellant's assignment of error is without merit; the judgment of the trial court is affirmed.
 ___________________________ ROBERT A. NADER, JUDGE
FORD, P.J., GRENDELL, J., concur.